JORDAN et al. v. MARKS et al.

No. 11151.

Circuit Court of Appeals, Fifth Circuit.

Feb. 15, 1945.

Rehearing Denied March 9, 1945.

WALLER, Circuit Judge, dissenting.

Gilbert P. Bullis, of Ferriday, La., for appellants.

Arthur O'Quin, Leon O'Quin, and John M. Madison, all of Shreveport, La., and Allan Sholars and Geo. Gunby, both of Monroe, La., for appellees.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellants, twenty-four in number, sued to be recognized as the sole owners and possessors of a tract of land located in Tensas Parish, Louisiana, having a value in excess of $3,000, free from all claims of the appellee Henry M. Marks.

Jurisdiction was based upon diversity of citizenship. The complaint alleged that all plaintiffs were citizens and residents of Louisiana except two, who were citizens and residents of the State of Illinois, and that the defendants were citizens and residents of Mississippi, West Virginia, and Delaware. Upon the motion of the defendant Marks that the suit be dismissed for lack of jurisdiction, the court rearranged the litigants according to their interests, placing two of the plaintiffs, residents of Louisiana, on the side of the defense, and thereupon dismissed the suit for want of jurisdiction. The correctness of this ruling is the only question before us.

In their bill of complaint plaintiffs alleged that they had acquired the property by inheritance from Henry Jordan, and that they had lived upon and cultivated the property up to the time of the filing of this suit; that Marks wrongfully and erroneously claimed ownership of an interest in all or part of the property under a tax sale by the sheriff of Tensas Parish to M. L. Spencer for alleged unpaid taxes of 1930 assessed to Mrs. Bessie S. Goldman; that Spencer acted in said tax sale as attorney and agent of, and for and in behalf of, Britton & Koontz National Bank of Natchez, Mississippi, and thereafter quitclaimed to said bank whatever title he acquired by said tax sale; that G. L. Wooley, receiver of said bank in liquidation, purported to convey to Marks all of the right, title, and interest of said bank by quitclaim without warranty in December, 1935; that in making the purchase from G. L. Wooley, as receiver of the bank, Marks acted as agent of, and for and in behalf of, the plaintiffs, and that the conveyance from the receiver should have been to plaintiffs, but that Marks wrongfully took title in his own name; that Marks contracted and agreed with plaintiffs, prior to the sale from the receiver, to buy in the property 'for plaintiffs, and plaintiffs believed that he was buying for them and, thus lulled into security, were prevented from taking available means to buy said property from the receiver; that it would be a fraud on the plaintiffs to permit Marks to take title for himself and retain it; that the sale by the receiver was in reality payment of a debt owed by the succession of Henry E. Jordan and some of plaintiffs to the bank, and was so considered and treated by the bank; that plaintiffs were entitled to be relieved of said claim and said debt, and of the claim of Marks under said purported sale, upon reimbursing him the price paid for said claim, with interest and costs; that Marks had granted a mineral lease on a portion of said lands to the Carter Oil Company, a West Virginia corporation, and had granted mineral leases on the remaining lands which by assignment had been transferred to the Tide Water Associated Oil Company and Seaboard Oil Company, Delaware corporations. Each of said corporations were made parties defendant.

In his motion to dismiss, Marks set forth that, as owner of an undivided interest in the property claimed by the plaintiffs and of the other one-half interest therein, otherwise acquired, he had made sales of portions thereof, set forth in marginal note;[1] that twenty of the twenty-four

---

[1] To Narcisse Jordan Robinson, lots 2 and 7, by deed dated June 8, 1939, recorded Notarial Book "AA," Pg. 585, who resold to Henry M. Marks, defendant herein, an undivided one-half interest in the mineral rights therein by deed dated October 3, 1939, recorded Notarial Book "AA," Pg. 587.

To Abe Jordan, lot 4, by deed dated October 3, 1939, recorded Notarial Book

named plaintiffs were citizens of the State of Louisiana, including Narcisse Jordan Robinson and Abe Jordan, Jr.; that Narcisse Jordan Robinson, as owner of lots 2 and 7 by deed from Marks and his author in title to an undivided one-half interest in the mineral rights therein, and Abe Jordan, Jr., as owner of lot 5 by deed from Marks subject to the reservation of an undivided one-half mineral interest, should, as respects the claims and demands relating to lots 2, 5, and 7, be recast as parties defendant with Marks, and that thereupon as between said parties defendant and the plaintiffs save two there would be no diversity of citizenship; that Allan Sholars, R. W. Hair, Winston L. Stokes, E. R. Whitaker, Mose Sexton, and Mamie Bolden Jordan, surviving widow in community and heir and legal representative of Abe Jordan, deceased, holding rights out of appellee and his immediate vendees were necessary and indispensable parties to said action; that all of said parties were citizens and residents of the State of Louisiana, and, as between them and the plaintiffs, there was no diversity of citizenship, and therefore no jurisdiction in the court below.

On the trial of the jurisdictional issue plaintiffs dictated an admission into the record that no judgment rendered against Marks to all or any part of the land in controversy would have any effect on sales and leases listed in the motion to dismiss for the reason that the plaintiffs admitted that all of the sales and leases set forth therein, *except those made to parties to the suit,* were made to purchasers who bought in good faith on the face of the record, hence, could not be affected by any alleged fraud on the part of Marks even though such fraud was proven.

Plaintiffs later during the hearing of said motion entered a nonsuit against all defendants except Marks.

Plaintiffs' admissions and the nonsuiting of all defendants except Marks were intended to eliminate from controversy any rights acquired in the property by third parties out of Marks, not parties to the suit, and thus dispense with the requirement of their being joined as necessary parties defendant. Whether this was accomplished we find it unnecessary to decide.

Analyzing the allegations of plaintiffs' petition, it is clear that the heirship of plaintiffs set forth therein is not an issue except as tending to fix the undivided interest in the property asserted by each plaintiff. The one issue before the court under the pleadings was the alleged fraud of Marks, in violation of his fiduciary duty as agent of the plaintiffs, in taking in his own name title to property which he was acquiring for them.

Two of the plaintiffs, Narcisse Jordan Robinson and Abe Jordan, Jr., four and five years after Marks had acquired the property, as shown by the admissions, acquired from him title to portions thereof. Their interests lie in protecting the property so acquired, and, upon the basis of the proof made on the trial of the jurisdictional issue,[2] it is clear that, having acquired by purchase from Marks several

---

"A," Pg. 584, who resold to Henry M. Marks, defendant herein, an undivided one-half interest in the mineral rights therein by deed dated October 3, 1939, recorded Notarial Book "A," Pg. 587.

To Abe Jordan, Jr., lot 5, by deed dated February 13, 1940, recorded Notarial Book "BB," Pg. 178, subject to reservation of undivided one-half of mineral rights.

To Mose Sexton, the 72 acre tract aforesaid, by deed dated July 22, 1939, recorded Notarial Book "AA," Pg. 553, subject to reservation of undivided one-half of mineral rights.

To Allan Sholars, undivided 4/23rds royalty interest, in lots 1–7, incl., and 72 acre tract, by deed dated June 11, 1943, recorded Notarial Book "GG," Pg. 9, who, in turn, sold to R. W. Hair by deed dated June 14, 1943, recorded Notarial Book "GG," Pg. 223.

Royalty interests were also sold by the said Narcisse Robinson, Abe Jordan, and Abe Jordan, Jr., covering lots 2, 4, 5, and 7, to Winston L. Stokes, who resold the same to E. R. Whitaker and another, by deeds dated and recorded, respectively, July 8, 1942, in Book "EE," Pg. 564, and August 12, 1942, in Book "EE," Pg. 584.

2 No evidence was offered by the two plaintiffs purchasing from Marks to show that they had no knowledge of his fraud at the time of their purchase from him. As the Federal courts are courts of limited jurisdiction, it was incumbent upon plaintiffs, especially when the court's jurisdiction was challenged, to show facts vesting the court with jurisdiction; and, the sales to two of the plaintiffs having been admitted, to do away with the effect of the admission it was necessary for the plaintiffs to show that they had

years subsequent to the alleged fraud practiced upon them with respect to the property, they waived any right that they might previously have had against Marks based upon his alleged fraud. As the plaintiffs were suing for all of the property, including the portions conveyed to two of the plaintiffs by Marks under recorded deeds, it is clear that the interests of these two plaintiffs are on the side of Marks to protect the title acquired by them from him. To recover all of the property, plaintiffs must set aside the sales of portions of the property from Marks to two of the plaintiffs. In no other way may they recover the entire property sued for, even though fraud be established. Under such condition, the two plaintiffs holding title from Marks should be recast as parties defendant with him; when recast, as between the parties defendant and the remaining plaintiffs save two, there is no diversity of citizenship and no basis for jurisdiction in the Federal court.

■ "The mere fact that certain parties who seek relief against each other make common cause against a third person who is also a party does not require them to be aligned as parties plaintiff." 35 C.J.S., verbo, Federal Courts, § 59, page 884, and cases cited under Footnote 90.

■ Where, as here, some of the plaintiffs are seeking to enforce a right which is destructive of interests which other plaintiffs have acquired from defendant-appellee, the question of diversity of citizenship is to be determined by arranging the parties as their interests require and according to the real matter in dispute.[3]

■ The judgment appealed from dismissing the suit for want of jurisdiction is correct. City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47; DeGraffenreid v. Yount-Lee Oil Co., 5 Cir., 30 F.2d 574; Edwards v. Glasscock, 5 Cir., 91 F.2d 625; Town of Lantana, Fla. v. Hopper, 5 Cir., 102 F.2d 118-119.

Judgment affirmed.

WALLER, Circuit Judge (dissenting).

Jurisdiction in the Federal Court ordinarily is laid by the allegations in the complaint. The complaint here seeks no relief on behalf of twenty plaintiffs against the two plaintiffs who purchased lands from Marks. These two plaintiffs, which the lower Court realigned as defendants, unquestionably have a joint and common interest with the other twenty plaintiffs in obtaining relief against Marks for the land to which it is alleged Marks wrongfully holds title and which was not sold to these two defendants. There is no breach of warranty in issue. The pleadings put no controversy in issue between the plaintiffs. The fact that the two realigned plaintiffs might, on final hearing, be decreed to be estopped to recover relates to the merits and not to the matter of jurisdiction. The twenty plaintiffs who did not purchase land from Marks might never assert any claim against the other two plaintiffs. Their differences, if any, might have been, or might yet be, settled without litigation. Whether there is a collision of interests between plaintiffs, necessitating a realignment of some of the plaintiffs as defendants will depend upon the relief sought by the complaint in the pending case. The possibility that some day, somewhere, sometime, there might be a clash between plaintiffs in some other suit should not have the slightest bearing on the Court's jurisdiction in the pending case. The fact that two of the plaintiffs might not have the right to recover against the named defendant for portions of the land which they bought from defendant should not prevent those two plaintiffs from litigating with the defendant over that part of the land which they did not acquire by purchase. Surely they should be allowed the right to litigate with the defendant under the allegations of the complaint, by virtue of which jurisdiction ordinarily attaches. Rule 20 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that a plaintiff or defendant need not be interested in obtaining or defending against all of the relief demanded, and that judgment

---

no knowledge of the fraud at the time of their purchase. No evidence of any kind was offered to show such want of knowledge, and, if, as they allege, Marks in purchasing the property acted for them and was their agent, then the fact that he had taken title in himself con-

trary to his fiduciary duty certainly was known to them since they were purchasing portions of the property from him.

[3] Cf. Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Detroit Tile & Mosaic Co. v. Mason Contractors Ass'n, 6 Cir., 48 F.2d 729.

may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their. respective liabilities. The Rules of Civil Procedure, of. course, do not affect jurisdiction, but they do affect the rights of the parties to sue and do have a bearing upon jurisdiction when a realignment of parties, based on the character of the relief sought, is involved.

My brethren say that the interest of the two realigned defendants who purchased property ·from Marks "[lay] in protecting the property so acquired." This assumption by the Court seems contrary to the allegations of the complaint and· if this were true, why did these plaintiffs join in bringing the suit? For aught that 'this Court knows, these two plaintiffs' interest in the lands remaining unsold by Marks might be worth more than the portion that they acquired 'from Marks. Furthermore, if Marks were guilty of a fraud or a breach of trust of which these two plaintiffs were ignorant, they, in an appropriate proceeding, would be entitled to recover the money paid Marks for the purchase of the lands, together with interest. But be that as it may, whether these two plaintiffs have· more to gain by winning the suit than by retaining title to the land ·bought is a matter of which the writer is wholly without knowledge. · They joined as plaintiffs and they should be permitted to select the course by which their rights would be best protected rather than to have that course selected for them by either Marks or the Court. ·

. The majority opinion also says that these two defendants "having acquired by pur-·chase from Marks several years subsequent to the alleged fraud practiced upon them with respect to the property * * *. waived any right.that they might previous-ly have had against Marks based upon his alleged 'fraud." That is a matter that would have to be determined on the merits rather than on the question of jurisdiction, because it would take knowledge of the fraud on the part of these plaintiffs before they would be held to have waived any right ·based upon the fraud, and the Court

should not base its holding as to ·jurisdiction upon the merits of the case when the testimony as to the merits has never been taken.

The majority opinion seems to be predicated upon the possibility that it would be permissible for twenty of the plaintiffs in this case to have relief against the two re-aligned plaintiffs as to lands purchased by them from defendant, and also that in some manner the question of breach of warranty might sometime arise, but the answer to that is that such relief is not sought here. and a realignment of the parties should not be ordered in anticipation that somebody might interject these issues later. If· so, that would be the time to consider realignment. We are not justified in holding or denying jurisdiction on anticipated and un-projected issues.

· The plaintiffs have not sought to have their interest partitioned in this case, nor to determine what the undivided interest of any plaintiff is. They seek to have themselves declared the owners of these lands *free from the claims of defendant Marks*—not free from the claims of Marks and all others claiming under him, and I am unaware of any right that Marks has to insist that the plaintiffs litigate among themselves when the only relief sought is the cancellation of any claim that Marks has to the lands involved. This is not a suit to quiet title but to, cancel the claims of Marks which are alleged to be fraudulent, and it seems incongruous for the Court to require a litigant to go in and become aligned with a defendant alleged to be guilty of fraud or to defend a claim which he has characterized as fraudulent. As-suredly this Court would not, in its delib-erations on his case, exclude the possibility that there are still in this sordid and selfish world those who would not choose to de-fend, or to retain the benefits of, property taken from others by fraud, even if they had no knowledge of, or participation in the fraud. Neither Marks. nor the Court has a right to require plaintiffs to defend against their own interests and claims.

For these reasons I am unable to concur in the majority opinion.